UNITED STATES DISTRICT COURT
SOUTHERN DISCTRICT OF WEST VIRGINIA
AT CHARLESTON

CANDACE M. KEY, Individually
and as Administratrix of the
Estate of Robert Shawn Key,
Deceased,

            Plaintiff,

v.                                Civil Action No. 5:23-cv-00494

APPALACHIAN POWER COMPANY,
AMERICAN ELECTRIC POWER
COMPANY, INC., and
ASPLUNDH TREE EXPERT, LLC,

            Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


        Pending is defendant American Electric Power Company,

Inc.'s ("American Electric") Motion for Summary Judgment (ECF

No. 23), filed December 5, 2023, in which American Electric

seeks summary judgment in its favor on the basis that it cannot

be liable as plaintiff has alleged no facts that would justify

piercing the corporate veil.


<u>I. BACKGROUND</u>


        Plaintiff Candace Key, individually and as

administratrix of the estate of Robert Key, alleges that, on

April 28, 2023, her husband Robert Key was killed while working

as a lineman in the employ of Appalachian Power Company ("Appalachian Power") and American Electric.  Compl. ¶¶ 9-15. According to the complaint, on that date, electrical utility services in Bolt, West Virginia, were disrupted by a tree that had fallen and damaged a power pole; Mr. Key and two coworkers inspected the area; Asplundh employees cut the fallen tree; and as a result, another tree in close proximity fell on Mr. Key, whereupon he sustained severe injuries and subsequently died while in transit to the hospital.  See id. at ¶¶ 10-15. Plaintiff alleges that as a result of the acts or omissions of defendants, Mr. Key endured tremendous pain and suffering and was killed; Mr. Key's family suffered lost wages, benefits, and other damages; significant medical bills and funeral expenses were incurred; and Mr. Key's family (plaintiff, being Mr. Key's widow, and their children) suffered an overwhelming loss of companionship, services, and society.  Id. at ¶¶ 21-24.

The complaint asserts eight causes of action: deliberate intent (Count I); wrongful death (Count II); gross negligence (Count III); negligence (Count IV); prima facie negligence (Count V); breach of duty to properly train, supervise, hire, retain and dismiss employees, servants, and agents (Count VI);  loss of consortium (Count VII); and respondeat superior (Count VIII).  Id. at ¶¶ 25-87.  All counts are asserted broadly against "Defendants" except for Count I

(deliberate intent), which is specifically asserted against
Appalachian Power and American Electric.  <u>Id.</u>

     The complaint described Appalachian Power as "a
Virginia corporation conducting business in Raleigh County, West
Virginia," and American Electric as "an Ohio corporation
conducting business in Raleigh County, West Virginia and the
parent organization of Defendant Appalachian Power Company."
<u>Id.</u> at ¶¶ 5-6.  Throughout the complaint the two are jointly
referred to as "APCo and AEP" or "APCo/AEP," and other than
explaining their citizenship and that American Electric is the
parent company of Appalachian Power, their relationship is not
otherwise explored, nor are they referred to separately.

     Plaintiff filed this action in the Circuit Court of
Raleigh County on June 30, 2023, against defendants Appalachian
Power, American Electric, and Asplundh.  Compl., Notice of
Removal Ex. A, ECF No. 1-1.  Defendants removed on July 21,
2023, pursuant to the court's diversity jurisdiction.[1]  Notice of
Removal, ECF No. 1.

     American Electric filed the instant Motion for Summary
Judgment (ECF No. 23) and supporting memorandum (ECF No. 24) on

---

[1] Appalachian Power is incorporated under the laws of Virginia
and American Electric is incorporated under the laws of New
York.  Notice of Removal ¶¶ 8-9.

3

December 5, 2023, asserting that it is protected by the
corporate structure and cannot be held liable for the acts or
omissions of its subsidiary, Appalachian Power.  Plaintiff filed
her response (ECF No. 25) on December 20, 2023, requesting the
court hold the motion in abeyance until she is able to conduct
discovery in support of her claims.  American Electric filed its
reply (ECF No. 26) on December 27, 2023.


## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  Courts at this stage do not resolve disputed
facts, weigh evidence, or make determinations of credibility.
See Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir.
1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).
Material facts are those necessary to establish the elements of
a party's cause of action.  See Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986); see also The News & Observer Publ'g
Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir.
2010).  A dispute of material facts is genuine if, in viewing
the record and all reasonable inferences drawn therefrom in the
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-moving party.  See

4

Anderson, 477 U.S. at 248.  The moving party is entitled to summary judgment if the record, as a whole, could not lead a trier of fact to find for the non-moving party.  See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (emphasis in original).  "[A] party opposing a properly supported motion for summary judgment '"may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."'"  Id. at 248 (quoting First Nat'l Bank of Ariz v. Cities Serv. Co., 391 U.S. 253 (1968) (quoting Fed. R. Civ. P. 56(e))) (ellipses in original); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").  A non-movant who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will lose at summary judgment because "the nonmoving party has failed to make a sufficient showing on an essential element of her case

with respect to which she has the burden of proof." <u>Celotex</u>
<u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).


### III. ANALYSIS

The complaint asserts that American Electric is liable
as the employer and/or parent of the employer of Mr. Key.
American Electric moves for summary judgment on the grounds that
it cannot be held liable under any theory proposed in the
complaint as it was not decedent's employer, the doctrine of
respondeat superior is inapplicable, and plaintiff has not
alleged any facts that would support piercing the corporate
veil.  Plaintiff responds that the timing of the motion for
summary judgment calls for abeyance, and asserts that because
American Electric's motion and supporting memorandum contain a
purported factual inaccuracy, "Plaintiff must be given the
opportunity to inquire as to whether the remaining portions of
the memorandum are also inaccurate."  Resp. at 6.

### A.    Timing of Summary Judgment

First, the court addresses plaintiff's contention that
the motion should be held in abeyance because it was filed at
the beginning of the case before plaintiff had the opportunity
to conduct discovery on the issue.  Federal Rule of Civil
Procedure 56 provides that, "[u]nless a different time is set by

local rule or the court orders otherwise, a party may file a motion for summary judgment <u>at any time</u> until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis added). When facts are unavailable to the nonmovant, the nonmovant must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Upon such a showing, the court may "defer considering the motion or deny it," "allow time to obtain affidavits or declarations or to take discovery," or "issue any other appropriate order." Fed. R. Civ. P. 56(d)(1)-(3).

American Electric argues that because plaintiff has not supplied a declaration or affidavit under Rule 56(d), she is not entitled to ask for additional time for discovery. While the Fourth Circuit Court of Appeals often puts great emphasis on such a document, <u>see</u> <u>Harrods Ltd. v. Sixty Internet Domain Names</u>, 302 F.3d 214, 244 (4th Cir. 2002) ("we 'place great weight on the Rule 56(f) affidavit'") (quoting <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996)), it has also said that it is not always required. <u>Id.</u> at 244. "When the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues, such as intent, are involved, courts have not always insisted on a Rule 56(f) affidavit if the nonmoving party

has adequately informed the district court that the motion is

pre-mature and that more discovery is necessary." Id. (citing

First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380-81

(D.C. Cir. 1988)).

> Generally speaking, "[s]ufficient time for
> discovery is considered especially
> important when the relevant facts are exclusively in the
> control of the opposing party." 10B Charles
> A. Wright, Arthur R. Miller, & Mary Kay Kane,
> Federal Practice & Procedure § 2741, at 419
> (3d ed. 1998). And summary judgment prior to
> discovery can be particularly inappropriate
> when a case involves complex factual questions
> about intent and motive. See Illinois State
> Employees Union v. Lewis, 473 F.2d 561, 565-
> 66 (7th Cir. 1972) (motive); Int'l Raw
> Materials, Ltd. v. Stauffer Chem. Co., 898
> F.2d 946, 949-50 (3d Cir. 1990) (complex
> questions).

Id. at 246-47.

In Harrods Ltd., the Fourth Circuit found that "[t]he

district court was . . . fully informed about why [plaintiff]

was requesting the normal time to conduct discovery, and . . .

the purposes of Rule 56(f) were served." Id. at 246.

Additionally, because the case involved complex factual

questions about intent and motive, the court found further

discovery was necessary. Id. at 246-47.

That is not the case here. Plaintiff did not file a

Rule 56(f) declaration or affidavit and the court has not been

apprised of the information that plaintiff wishes to proceed to

8

discovery to uncover.  The issue here is not a complex factual question, nor does it involve intent or motive, but is rather a simple inquiry as to whether American Electric exerts any control over Appalachian Power that would make it an appropriate party in this case.  See, e.g., United States v. Bestfoods, 524 U.S. 51, 61–62 (1998).  Plaintiff does not describe the type of information that she believes exists and could be obtained through discovery that would support her opposition to the summary judgment motion, instead proposing what amounts to exactly the type of "fishing expedition" that these procedural rules seek to avoid.

Finally, plaintiff asserts that American Electric was untruthful in its memorandum in support of its motion for summary judgment and she is therefore entitled to engage in discovery on that ground alone.  The inaccuracy to which plaintiff points is that, in an Amended Restated Certificate of Incorporation filed by American Electric in New York in 2019, American Electric says it "is authorized to assist its subsidiaries in any manner it desires," while American Electric's affidavit, filed as an exhibit to the motion for summary judgment, says it owns no assets and has no control over the operations and activities of Appalachian Power.  See Resp. at 5–6.  This is unpersuasive.  A corporate form filed years ago in a state completely unrelated to this action stating that

American Electric is legally entitled to do something does not prove false the statement by American Electric in a sworn affidavit filed in this case that it does not, in fact, do the thing it may be legally entitled to do.  Plaintiff has pointed to no true conflict between the evidence supplied by American Electric and the court will not allow plaintiff to go on a fishing expedition on this account.

Based on the scope of the issue presented and the plaintiff's failure to identify why, specifically, more discovery is necessary, and the lapse of nine months since the motion was briefed, the summary judgment motion is not under the circumstances premature, limited as it is to the issue of corporate control.

B.    Piercing the Corporate Veil

American Electric was not Mr. Key's employer[2] and so cannot be directly responsible for his death, occurring as it

---

[2] American Electric has shown through Mr. Key's W-2 tax forms and the admissions of plaintiff that Mr. Key was directly employed by Appalachian Power, not American Electric.  See W-2 Wage and Tax Statements, 2018-2022, Am. Elec.'s Mot. Summ. J. Ex. A, ECF No. 23-1; Pl.'s Resp. to Interrogatories, Am. Elec.'s Mot. Summ. J. Ex. C, ECF No. 23-3.  Appalachian Power's first request for admission in its First Set of Interrogatories, Requests for Production, and Requests for Admissions to Plaintiff Candace M. Key reads, "Admit that, at the time of the Incident, Mr. Key was employed by Appalachian Power Company."  Appalachian Power's First Set of Interrogatories, Am. Elec.'s Mot. Summ. J. Ex. C,

did during the course of his employment, nor can a parent be liable for the acts of its subsidiary under the doctrine of respondeat superior.  Thus, American Electric can only remain in the case if plaintiff can show that the corporate veil between American Electric and its subsidiary, Appalachian Power, should be pierced.

American Electric argues that it should be granted summary judgment because the undisputed evidence is insufficient to pierce the corporate veil and hold it liable for the acts or omissions of its subsidiary, Appalachian Power.  See Mem. Supp. at 4.  First, the court must determine which law to apply to American Electric's claims.  American Electric's brief is entirely based on West Virginia law; however, American Electric does not undertake a choice of law analysis, which, as detailed below, reveals that Virginia law is the governing law for this analysis.

1.  Choice of Law

"A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules."  Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 599–600

---

ECF No. 23-3.  Plaintiff's response to Request No. 1 is, "Plaintiff admits."  Pl.'s Resp. to Interrogatories at 14.

(4th Cir. 2004) (citing <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 79 (1938); <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)); <u>see also</u> <u>Melton v. Precision Laser & Instrument, Inc.</u>, No. 2:12-cv-01697, 2013 WL 210900 (S.D.W. Va. Jan. 18, 2013) (Copenhaver, J.).  Thus, West Virginia's choice-of-law rules will determine which state's veil-piercing laws to apply to the present case.

    "The Supreme Court of Appeals of West Virginia has not answered the question of which state's law should apply when a plaintiff attempts to pierce the corporate veil of an entity organized under the laws of another state." <u>Antero Res. Corp. v. Braddock Construction, LLC</u>, No. 1:20-cv-00147, 2023 WL 2401568, at *4 (N.D.W. Va. Mar. 8, 2023) (Kleeh, C.J.); <u>see also</u> <u>Jones v. Heil Process Equip. Corp.</u>, Civ. No. 3:13-22811, 2016 WL 3566243, at *5 (S.D.W. Va. June 27, 2016) (Chambers, C.J.); <u>Mountain Link Assocs. v. Chesapeake Energy Corp.</u>, 2:13-cv-16860, 2014 WL 4851993, at *6 (S.D.W. Va. Sept. 29, 2014) (Johnston, J.).  In <u>West Virginia ex rel. Elish v. Wilson</u>, 434 S.E.2d 411 (W. Va. 1993), the West Virginia Supreme Court of Appeals, finding that West Virginia did not have a more significant relationship than the state where the corporation was formed, determined that it would follow general choice-of-law principles and "apply the law of the state of incorporation."  434 S.E.2d at 417; <u>see also</u> <u>Jones</u>, 2016 WL 3566243, at *5.  In this

instance, the state of incorporation of Appalachian Power — the entity whose corporate veil plaintiff wishes to pierce — is Virginia, and Virginia law on piercing the corporate veil would govern.  Similarly, if the court were to apply the internal affairs doctrine, which directs that the law of the state of incorporation controls unless another state has a more significant relationship to the underlying event and the parties, the laws of Virginia, being the state of incorporation, would still apply.  <u>See</u> <u>Jones</u>, 2016 WL 3566243, at *6; <u>see</u> <u>generally</u> Restatement (Second) of Conflict of Laws § 307; <u>Sky Cable, LLC v. DIRECTV, Inc.</u>, 886 F.3d 375, 386 (4th Cir. 2018) ("The law of the state in which an entity is incorporated generally governs the question whether a court may pierce an entity's veil.") (citing <u>First Nat'l Bank</u>, 391 U.S. at 621; <u>Taurus IP, LLC v. DaimlerChrysler Corp.</u>, 726 F.3d 1306, 1336 (Fed. Cir. 2013), <u>superseded by statute as stated in</u> <u>Rubin v. Islamic Republic of Iran</u>, 583 U.S. 202 (2018)).

    2.   Piercing the Corporate Veil Under Virginia Law

      "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." <u>Bestfoods</u>, 524 U.S. at 61.  "But there is an equally fundamental principle of corporate law . . . that the

corporate veil may be pierced and the shareholder held liable for the corporation's conduct" in certain circumstances, "most notably fraud."  Id. at 62; see also Bogese, Inc. v. State Highway & Transp. Comm'r of Va., 462 S.E.2d 345, 348 (Va. 1995) ("[I]t is elemental that a corporation is a legal entity that is completely separate and distinct form its shareholders, and only '"an extraordinary exception"' will justify piercing the corporate veil.") (quoting Cheatle v. Rudd's Swimming Pool Supply Co., 360 S.E.2d 828, 831 (Va. 1987)).  "In Virginia, the party seeking to pierce the corporate veil bears the burden of proof."  William v. AES Corp., 28 F. Supp. 3d 553, 562 (E.D. Va. 2014) (citing Buffalo Wings Factory, Inc. v. Mohd, No. 1:07CV612, 2008 WL 4642163, at *6 (E.D. Va. Oct. 15, 2008)).

Piercing the corporate veil "constitutes 'an extraordinary exception' to be permitted only when it becomes necessary to promote justice."  Cheatle, 360 S.E.2d at 831 (quoting Beale v. Kappa Alpha Ord., 64 S.E.2d 789, 797–98 (Va. 1951)).  This may occur when "the corporate entity was the alter ego, alias, stooge, or dummy of the individuals sought to be charged personally," Cheatle, 360 S.E.2d at 831 (citing Lewis Trucking Corp. v. Commonwealth, 147 S.E.2d 747, 753 (Va. 1966), being used as "a device used to mask wrongs, obscure fraud, or hide crime," Bogese, 462 S.E.2d at 348 (citing Cheatle, 360 S.E.2d at 831).  The Virginia Supreme Court of Appeals wrote in

<u>Beale</u> that not only must "undue domination and control [be] exercised by the parent corporation over the subsidiary," but this control must also be "exercised in such a manner as to defraud and wrong the complainant, and that unjust loss or injury [must] be suffered by the complainant as the result of such domination unless the parent corporation be held liable." 64 S.E.2d at 797.

"Alter ego liability may attach 'where there is such unity between a corporation and an individual that the separateness of the corporation has ceased.'" <u>William</u>, 28 F. Supp. 3d at 562 (quoting 1 William Meade Fletcher, <u>Fletcher Cyclopedia of the Law of Corporations</u> § 41.10). Although "'no single rule or criterion . . . can be applied to determine whether piercing the corporate veil is justified,'" <u>Dana v. 313 Freemason</u>, 587 S.E.2d 548, 554 (Va. 2003) (quoting <u>O'Hazza v. Exec. Credit Corp.</u>, 431 S.E.2d 318, 320 (Va. 1993)) (ellipses in original), "[o]ne of the principal factors [Virginia courts] look to . . . is whether the inability of the corporation to satisfy the judgment against it is the result of the deliberate undercapitalization by the incorporating stockholders," <u>id.</u>

In an affidavit attached to American Electric's motion for summary judgment, David C. House, the Assistant Secretary of

American Electric, <u>inter alia</u>, averred on behalf of American

Electric the following:

> AEPC, Inc. [American Electric], . . . owns
> 100% of the common stock of Appalachian Power
> Company.

> AEPC, Inc. . . . does [not] provide any utility
> services to any customers in West Virginia.

> The business affairs of AEPC, Inc. and its
> subsidiaries are separately maintained,
> managed and controlled by the officers,
> directors and managers of each of the
> respective entities. APEC, Inc. and its
> subsidiaries observe all formalities of law
> required to evidence their separate and
> distinct legal existence.

> APEC, Inc. does not, and did not at the time
> of the events giving rise to this cause of
> action, exercise authority, responsibility,
> supervision or control over job sites or work
> locations, including in West Virginia nor does
> it exercise control over Appalachian Power
> Company's operations.

> AEPC, Inc. has no employees and no assets
> other than holding stock in other companies
> and certain intellectual property.

Am. Elec. Aff. ¶¶ 7–10, 14, Am. Elec. Mot. Summ. J. Ex. B, ECF

No. 23-2. These statements in the affidavit, taken as true,

show that American Electric observes the formalities between

itself and its subsidiary, Appalachian Power, necessary to

maintain corporate separateness. Not only has plaintiff failed

to point to any evidence it believes may be discoverable that

would support disregarding the corporate structure, plaintiff

has failed to even allege any facts that would justify doing so.

16

There is no evidence of any untruthfulness, deception, or fraud; there is no evidence that Appalachian Power is undercapitalized, much less deliberately so; there is no evidence that Appalachian Power operates as an alter ego of American Electric; there is no evidence that American Electric oversees, supervises, or otherwise controls the line workers of Appalachian Power; and, finally, there is no evidence whatsoever that the corporate structure between American Electric and Appalachian Power exists to thwart justice or that justice will not be served by respecting the corporate structure of these two entities. Thus, there can be no basis for holding American Electric liable in this case.

## IV. CONCLUSION

It is hereby ORDERED that American Electric's Motion for Summary Judgment (ECF No. 23) be, and it hereby is, GRANTED in favor of American Electric, and it is dismissed from this action.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: September 26, 2024

John T. Copenhaver, Jr.
Senior United States District Judge

17